UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

MARCO ANTONIO ESPINOZA MENDOZA, Petitioner,

v. Civil Action No. 5:26-cv-266-RGJ

ADAM SMITH, et al., Respondents.

****

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Petition for Writ of Habeas Corpus [DE 1] filed by *pro se* Petitioner Marco Antonio Espinoza Mendoza ("Espinoza Mendoza"). Espinoza Mendoza also moved for a Temporary Restraining Order [DE 3], to appoint counsel [DE 4], and for leave to proceed *in forma pauperis* [DE 5]. The United States ("Respondents")[1] responded [DE 10], and Adam Smith, Christian County Jailer, responded [DE 17]. Espinoza Mendoza also moved for immediate release, to compel service of Respondents' response and exhibits, for extension of time to reply, and for a Spanish interpreter. [DE 12]. Respondents responded [DE 14] and do not oppose Espinoza Mendoza's request for an extension of time [DE 14 at 136]. Espinoza Mendoza also moved [DE 18] for a ruling on his motion at [DE 12] or, alternatively, for leave to file a reply out of time with a proposed reply.

These matters are ripe. For the reasons below, Espinoza Mendoza's Petition for Writ of Habeas Corpus [DE 1] is **GRANTED**; his motion to compel service [DE 12] is **DENIED** as moot; his motion [DE 12] for an extension of time to reply and his motion [DE 18] for a ruling on his motion at [DE 12] are **GRANTED**; his motion for immediate release [DE 12] is **GRANTED**; and his motions for a Temporary Restraining Order [DE 3], to appoint counsel [DE 4], for leave to proceed *in forma pauperis*

[1] 28 U.S.C. § 517 allows the Office of the United States Attorney to make appearances in court to attend to the United States' interests. Respondents submitted responses in this case to attend "to the United States' interests to the extent that the petition also names a county official as a respondent." [DE 10 at 93 n.3].

[DE 5], and for a Spanish interpreter [DE 12] are **DENIED** as moot.

## I. BACKGROUND

Espinoza Mendoza is a native and citizen of Mexico. [DE 10 at 94]. He entered the United States on April 30, 2024, and was paroled into the United States for removal proceedings. [*Id.*]. Espinoza Mendoza remained in the United States after his parole expired on June 27, 2025. [*Id.*].

On June 17, 2026, an immigration judge ("IJ") ordered Espinoza Mendoza removed to Mexico, which Espinoza Mendoza appealed to the Board of Immigration Appeals. [*Id.*]. That appeal remains pending. [*Id.*].

Espinoza Mendoza was detained on August 12, 2026, by Immigration and Customs Enforcement ("ICE") officers and is currently held at the Christian County Jail in Hopkinsville, Kentucky. [*Id.*]. Espinoza Mendoza has not been provided with a custody redetermination hearing. [DE 1 at 2, 5].

## II. PETITION FOR WRIT OF HABEAS CORPUS AND RELATED MOTIONS

Espinoza Mendoza asserts that his continued detention without a bond hearing to determine whether his detention is justified by evidence of flight risk or danger is unlawful and violates his due process rights. [DE 1 at 16-17].

Respondents argue that the Court should deny Espinoza Mendoza's petition because he is properly detained under 8 U.S.C. § 1225(b)(2), which authorizes mandatory detention. [DE 10 at 95] *See* 8 U.S.C. § 1225(b)(2)(A).

Espinoza Mendoza moves to compel service of Respondents' response and exhibits [DE 12], Respondents certify that they sent Espinoza Mendoza via first class mail Respondents' response and accompanying exhibits [DE 10] and that they contacted the Christian County Jail to ensure Espinoza Mendoza was provided with an additional copy. [DE 14 at 136]. Espinoza Mendoza confirms that he

received these documents on October 15, 2026. [DE 18]. Accordingly, Espinoza Mendoza's motion to compel service [DE 12] is **DENIED** as moot.

Espinoza Mendoza also moves [DE 12] for an extension of time to reply to Respondents' response [DE 10]. He asks for an extension of fourteen days from the date that he received Respondents' response, October 15, 2026. [DE 12 at 126; DE 18 at 143]. Espinoza filed his proposed reply [DE 143] within his requested deadline on October 26, 2026, and Respondents responded, indicating that they do not oppose Espinoza Mendoza's proposed extension. [DE 14 at 136]. Rule 6(b)(1)(A) provides that a court may "for good cause, extend the time with or without notice if the court acts, or if a request is made, before the original time or its extension expires[.]" Given Espinoza Mendoza's *pro se* status, the difficulties he describes accessing Respondents' response while in custody [DE 12 at 126], and Respondents' lack of opposition, the Court finds good cause to grant Espinoza Mendoza's proposed extension. Accordingly, Espinoza Mendoza's motion [DE 12] for an extension of time to reply is **GRANTED** and his motion for a ruling on that motion [DE 18] is **GRANTED**.

**A. Espinoza Mendoza is detained under Section 1226(a), not Section 1225(b)(2)**

There is no dispute that Espinoza Mendoza was lawfully paroled into the United States or that his parole has since expired. The question is which detention statute properly applies to Espinoza Mendoza, who has resided within the United States since 2024. If 8 U.S.C. § 1226(a) applies, then Espinoza Mendoza was entitled to an individualized custody redetermination hearing, at which time the IJ was required to evaluate whether there is a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1)). Here, Espinoza Mendoza did not receive this hearing. [DE 1 at 2, 5].

In *Lopez-Campos v. Raycraft*, the Sixth Circuit held that mandatory detention of certain noncitizens "already present in the United States" who were not "seeking admission" was

unlawful, and that the petitioners were properly detained, if at all, under § 1226(a). *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) (explaining "§ 1226 applies to aliens already present in the United States" and "creates a default rule for those aliens . . . .").

Here, Respondents contend that *Lopez-Campos* is inapplicable because that "case dealt with individuals who did not apply for admission and who were not granted parole under 8 U.S.C. § 1182(d)(5), unlike [Espinoza Mendoza]." [DE 10 at 95]. Respondents ask the Court to follow the court's reasoning in *Jean v. Bullock*, No. 2:26-CV-02571-BCL-ATC, 2026 WL 1531056 (W.D. Tenn. May 30, 2026), which similarly distinguished *Lopez-Campos*. [*Id.* at 96]. Consistent with *Jean*, Respondents argue that Espinoza Mendoza is an "arriving alien" who received parole and therefore remains at all times an "alien seeking admission" within meaning of 8 U.S.C. § 1225(b)(2)(A). [*Id.* at 97-98 ("Because [Espinoza Mendoza] was encountered at the border and paroled, he falls outside of *Lopez-Campos*'s definition of Section 1226(a) and within Section 1225(a)(1)'s definition of 'applicants for admission' subject to mandatory detention under Section 1225(b)(2)(A).")].

Respondents' argument rests on a legal concept known as the "entry fiction" doctrine. As the Sixth Circuit has explained, "[t]his paradox of paroling aliens into the United States yet refusing to recognize their 'entry' into the United States has been termed the 'entry fiction' by some courts." *Rosales–Garcia v. Holland*, 322 F.3d 386, 391 n.2 (6th Cir. 2003). The doctrine stems from the notion that "an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). In *Mezei*, the Supreme Court created an "entry fiction," which extended this distinction to some individuals

in the interior of the United States but who, as a result of their status, are deemed technically on the threshold of entry.

The entry fiction doctrine is further reflected in the relevant federal regulation. Regulation defines an "arriving alien" as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. *An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act* [codified at 8 U.S.C. § 1182(d)(5)(A)], *and even after any such parole is terminated or revoked*.

8 C.F.R. 1001(q) (emphasis added). Indeed, as Respondents note, the Sixth Circuit has stated in dicta that "an arriving alien remains an arriving alien even if paroled . . . and even after any such parole is terminated or revoked." *Rais v. Holder*, 768 F.3d 453, 456 n.4 (6th Cir. 2014) (citing 8 C.F.R. § 1001.1(q)). Moreover, "[w]hen a Section 1182 humanitarian parole terminates, 'the alien shall forthwith return or be returned to the custody from which he was paroled[,] and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Daza v. Albarran*, No. 25-cv-10214-RFL, 2026 WL 81518, at *3 (N.D. Cal. Jan. 12, 2026) (quoting 8 U.S.C. § 1182(d)(5)(A)). *Cf. Martinez v. U.S. Atty. Gen*., 577 F. App'x 969, 973 (11th Cir. 2014) (citing 8 C.F.R. § 212.5(e)) ("When parole is terminated, the paroled alien is restored to the status that he or she had at the time of parole and becomes subject to removal proceedings.").

Respondents thus conclude, on termination of Espinoza Mendoza's parole, all the circumstances which require applying § 1225(b)(2) were necessarily met: Espinoza Mendoza was restored to (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2).

Yet courts in the Sixth Circuit are divided on whether, on expiration of their parole, noncitizens like Espinoza Mendoza who are present in the interior of the country are subject to mandatory detention under § 1225(b)(2). *Compare Chirinos Chirinos v. Tindell*, No. 3:25-CV-789-CHB, 2026 WL 926941, at *11 (W.D. Ky. Apr. 6, 2026) (finding section 1225(b)(2) applies because "upon the termination or expiration of an alien's parole, that alien is returned to the status they held at the time of their parole, that is, the status under which they were subject to the 'immediate charge and control' of DHS"), *Gonzalez Crispin v. Olson*, No. 4:26-CV-308-CHB, 2026 WL 1430506, at *4 (W.D. Ky. May 21, 2026) (accord), *Jean*, 2026 WL 1531056, at *3 (Petitioner thus falls without Lopez-Campos's definition of Section 1226(a) and within Section 1225(a)(1)'s definition of 'applicants for admission' subject to mandatory detention under Section 1225(b)(2)(A)"), *with Ontiveros v. Warden Corr. Ctr. of Nw. Ohio*, No. 3:26-CV-632, 2026 WL 1109422, at *5 (N.D. Ohio Apr. 24, 2026) ("Respectfully, this Court must disagree with *Chirinos*. *Chirinos* incorrectly conflates a return to 'custody' with a return to prior 'status.'"), *Quintero v. Olson*, No. 4:26-CV-34-DJH, 2026 WL 596643, at *3 (W.D. Ky. Mar. 3, 2026) (finding petitioner was "detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing"), *Ismoilov v. Maydak*, No. CV 26-185-DLB, 2026 WL 1587994, at *3 (E.D. Ky. June 3, 2026) (finding Sixth Circuit's reasoning in *Lopez-Campos* applied to petitioner who had been present in the interior for more than three years and whose parole had expired).

The same split has been recognized by district courts in our sister circuits across the country.[2] *See*, *e.g.*, *Sananes Hernandez v. Leyva*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at

---

[2] The unsettled state of the law is likely because, until the current executive administration, DHS often did not routinely pursue enforcement or detention actions against such parolees. *See* DHS Office of Inspector General, *DHS Needs to Improve Oversight of Parole Expiration for Select Humanitarian Parole Processes*, Report, No. OIG-25-30 (July 3, 2025) (finding DHS lacked a well-defined process for addressing parole expirations and "did not initiate enforcement actions for parolees whose parole expired."); *see also* GAO Report, GAO-26-107765.

*5 (D. Utah July 6, 2026) ("Recent litigation has highlighted a dispute regarding DHS's authority to re-detain parolees under 8 U.S.C. § 1225(b)(2) following the termination or expiration of their parole."); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 309 (E.D.N.Y. 2025) ("Although Rodriguez-Acurio is an applicant for admission, she clearly is not presenting herself at the border and was not recently apprehended just after entering, and thereby is not 'seeking admission' under Section 1225(b)(2)."), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026); *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025) (collecting cases holding that "any determination as to [former parolee noncitizen's] detention must be conducted under the discretionary framework of Section 1226(a), which 'governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal'"); *Estebesov v. Olson*, No. 26-CV-1165, 2026 WL 1229622, at *3, n.2 (N.D. Ill. May 5, 2026) (holding "[t]he plain language of the relevant statute provides that upon termination of his parole, Petitioner was subject to mandatory detention under § 1225(b)" and noting that "the Fifth and Eighth Circuits adopted this minority view").

The Court is unpersuaded by Respondent's arguments distinguishing *Lopez-Campos*. Indeed, the plain language of the parole statute suggests that Espinoza Mendoza is on equal footing with the petitioners in *Lopez-Campos*. The parole statute provides that, on expiration of parole, a petitioner's "case shall continue to be dealt with *in the same manner as that of any other applicant for admission* to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). And the process for detaining other applicants for admission within the United States is clear: "Section 1226 generally governs the process of arresting and detaining aliens once inside the United States." *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-02061-SL, 2025 WL 2959617, at *4 (N.D. Ohio Oct. 20, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)). *See Lopez-Campos*, 175

F.4th at 722 ("Put differently, § 1225(b)(2)'s mandatory detention scheme applies to certain noncitizens who seek admission into the country, whereas § 1226's permissive detention scheme applies to all other noncitizens pending a decision on their removability, with exceptions.").

True, Espinoza Mendoza's status as a former parolee arguably means that he indefinitely continues to be "an arriving alien." See 8 C.F.R. 1001(q). But just as an "'applicant for admission' is not necessarily 'seeking admission,'" *Lopez-Campos*, 175 F.4th at 732, neither is an "arriving alien." In any event, as the district court in *Jean* explained, *Lopez-Campos* stands for the proposition that "the entry fiction 'does not control' when an alien has 'resided within the United States for years.'" 2026 WL 1531056, at *3. *See also Ontiveros*, 2026 WL 1109422, at *4 (finding regulatory definition of "arriving alien" unpersuasive); *Coal. For Human Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 85 (D.D.C. Aug. 1, 2025) ("[S]ection 1182(d)(5)(A) does not, as Defendants insist, say that parolees return, upon the termination or expiration of their parole, to 'the position of an applicant for admission standing at the threshold of entry."), *vacated on other grounds*, 185 F.4th 1275 (D.C. Cir. 2026); *Walizada v. Trump*, No. 2:25-cv-768, 2025 WL 3551972, at * 15 (D. Vt. Dec. 11, 2025) (finding it "absurd" "unjust" and "counterintuitive" that the idea that the expiration of a petitioner's parole would place him in the "perpetual status as an 'arriving alien'").

Here, Espinoza Mendoza's physical presence in the country for years even after the expiration of his parole demonstrates that he, just like petitioners in *Lopez-Campos*, is not "seeking admission." 18 U.S.C. § 1225(b)(2). *See* 175 F.4th at 723 ("[F]or a noncitizen to be 'seeking admission' under § 1225(b)(2)(A), the noncitizen must actively be in search of lawful entry into the United States via inspection and authorization by an immigration officer."); *Ismoilov*, 2026 WL 1587994, at *3 ("By remaining in the country undetected after his parole expired, Ismoilov

obtained similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having knowledge of their whereabouts.”).

Accordingly, the Court follows those courts which have held that § 1226(a), and not § 1225, applies to noncitizens such as Espinoza Mendoza, who remain in the country after their parole expires. *See supra* (collecting cases).

**B. Due Process**

Espinoza Mendoza asserts that his continued detention without a hearing to determine whether his detention is justified by evidence of flight risk or danger is unlawful and violates his due process rights. [DE 1 at 16-17].

Having determined that Espinoza Mendoza’s detention is governed by § 1226(a), Respondents’ arguments as to the due process required by § 1225(b)(2) are futile. [*See* DE 10 at 100 (“As an arriving alien, Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and that mandatory detention does not violate due process.”)]. Like the petitioners in *Lopez-Campos*, Espinoza Mendoza has “a liberty interest to be free from detention.” *Lopez-Campos*, 175 F.4th at 734. Deprivation of that interest “without bond under § 1226(a) [is] a deprivation of liberty that violates [his] due process rights” and makes his continued detention unlawful. *Id.*

**C. Remedy**

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) (“[C]ourts across the country have ordered the release of individuals stemming from ICE’s illegal detention.”); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 390 (E.D.N.Y. 2026) (“Release from detention is the typical remedy for unlawful executive detention.”) (cleaned up); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025)

(ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). See also *Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention.").

Release is not the only remedy, however. Historically, "common-law habeas corpus was, above all, an adaptable remedy," whose "precise application and scope changed depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). The writ's "most extensive" role at common law was "in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention." *Id.* at 780. In *Boumediene*, the Supreme Court made clear that "when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787.

The Court concludes that release is necessary because Espinoza Mendoza is currently being held in mandatory detention and has been for over two months. As such, his continued dentition, however transitory, is unlawful. Accordingly, the Court will order Espinoza Mendoza's release. This is in line with the remedies fashioned by other district courts in this circuit. *See*, *e.g.*, *Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025) (ordering release and requiring a bond hearing before further re-detention); *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-ATC, 2025 WL 3565348, at *7 (W.D. Tenn. Dec. 12, 2025) (ordering release pending a bond hearing). Moreover, "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" where the government has articulated no legitimate interest in detaining individuals who are neither flight risks nor dangers to the community. *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v.*

*Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

However, the Court will not require Respondents to hold a bond hearing following Petitioner's release. *But cf. Monge-Nunez*, 2025 WL 3565348, at *7. Nevertheless, should Respondents decide to re-detain Petitioner, absent a material change in circumstances, they must provide Petitioner with a bond hearing pursuant to Section 1226(a).

## III. REMAINING MOTIONS

Given that the Court grants Espinoza Mendoza's Petition for Writ of Habeas Corpus and finds release to be the proper remedy, his motion for immediate release [DE 12] is **GRANTED**. For the same reasons, Espinoza Mendoza's motions for a Temporary Restraining Order [DE 3], to appoint counsel [DE 4], and for leave to file *in forma pauperis* [DE 5] are **DENIED** as moot.

Espinoza Mendoza also moves for a Spanish interpreter to be present at the Show Cause Hearing this Court ordered [DE 7]. [DE 12 at 126]. Given that the Court granted [DE 16] Respondents' motion to remand that hearing [DE 15] on the basis that there were no relevant factual disputes, Espinoza Mendoza's motion for a Spanish interpreter [DE 12] is **DENIED** as moot.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** the following:

(1) Respondents are directed to release Petitioner immediately because of the unlawful detention in violation of his due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket by **November 2, 2026.**

**IT IS FURTHER ORDERED** that Espinoza Mendoza's motion to compel service [DE 12] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Espinoza Mendoza's motion [DE 12] for an extension of time to reply and his motion [DE 18] for a ruling on his motion at [DE 12] are **GRANTED**.

**IT IS FURTHER ORDERED** that Espinoza Mendoza's motion for immediate release [DE 12] is **GRANTED.**

**IT IS FURTHER ORDERED** that Espinoza Mendoza's motions for a Temporary Restraining Order [DE 3], to appoint counsel [DE 4], for leave to proceed *in forma pauperis* [DE 5], and for a Spanish interpreter [DE 12] are **DENIED** as moot.

Rebecca Grady Jennings, District Judge
United States District Court

October 30, 2026